Slip Op. 09-77

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ACCIAIERIE VALBRUNA S.p.A and VALBRUNA STAINLESS, INC., : : : : Plaintiffs, : : v. : : UNITED STATES, : : Defendant. : : | **Before: Judith M. Barzilay, Judge** **Court No. 08-00381** |

## <u>OPINION</u>

[Defendant's Motion to Dismiss is granted.]

Dated:  July 23, 2009

*White & Case LLP*, (*Gregory J. Spak, Yohai Baisburd*, and *Sarah O'Neal*), for Plaintiffs Acciaierie Valbruna S.p.A. and Valbruna Stainless, Inc.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Rachael Wenthold*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for Defendant United States.

**BARZILAY, JUDGE:**  The case presents an issue that has been before this Court and the Federal Circuit many times – whether the relief provided under Section 129 of the Uruguay

Court. No. 08-00381                                                                                     Page 2

Round Agreements Act ("URAA") is retrospective, prospective, or both.[1] *See, e.g.*, *Corus Staal BV v. United States*, 502 F.3d 1370, 1374 (Fed. Cir. 2007); *Corus Staal BV v. United States*, 32 CIT ___, ___, 593 F. Supp. 2d 1373, 1382-83 (2008). This particular action concerns the effect of a determination made by Commerce under Section 129 on certain stainless steel bar manufactured in Italy and imported into the U.S. by Plaintiffs Acciaierie Valbruna S.p.A. and Valbruna Stainless, Inc. (collectively, "Plaintiffs") from March 1, 2006 through February 28, 2007. Plaintiffs contest the U.S. Customs & Border Protection ("Customs") decision to liquidate and assess antidumping duties on entries made during the period of review. Compl. ¶¶ 40-47. Plaintiffs also challenge the instructions from Commerce to Customs which subjected those entries of stainless steel bar from Italy to antidumping duties. Compl. ¶¶ 48-54. Pursuant to USCIT R. 12(b)(1) and (b)(5), Defendant United States moves to dismiss Plaintiffs' claims for (1) the Court's lack of subject matter jurisdiction under both 28 U.S.C. § 1581(a) and § 1581(i), and (2) Plaintiffs' failure to state a claim upon which relief may be granted. The court grants Defendant's Motion to Dismiss for the reasons explained herein.

## I. Background

In 2002, Commerce issued an antidumping duty order on the subject merchandise. *Notice of Antidumping Duty Order: Stainless Steel Bar from Italy*, 67 Fed. Reg. 10,384, 10,384 (Dep't Commerce Mar. 7, 2002). In its final determination, Commerce employed the zeroing

---

[1] The plain language of Section 129 of the URAA provides that a determination made under that provision has prospective effect, thereby applying only to entries made on or after the date the United States Trade Representative directs the U.S. Department of Commerce ("Commerce") to implement the decision. 19 U.S.C. § 3538(c)(1)(B).

methodology to calculate the weighted-average dumping margin for the subject merchandise.[2] *Issues and Decision Memo for the Antidumping Duty Investigation of Stainless Steel Bar from Italy; Final Determination*, A-475-829 (Jan. 23, 2002), *available at* 2002 WL 171499, at *4-6 (discussing Commerce's use of the zeroing methodology in Comment 1).[3] Commerce calculated a final weighted-average dumping margin of 2.50% for Plaintiffs' entries of the subject merchandise. *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From Italy*, 67 Fed. Reg. 3,155, 3,158 (Dep't Commerce Jan. 23, 2002).

The European Communities thereafter challenged Commerce's use of zeroing in several antidumping investigations and administrative reviews before the World Trade Organization ("WTO"), including the investigation that resulted in the imposition of an antidumping duty order on the subject merchandise from Italy. *See* Request for Consultations by the European

---

[2] A dumping margin ("DM") is expressed functionally as DM = NV - (EP or CEP). The normal value, or "NV," is the price charged for the subject merchandise in the home market, an appropriate third country market price, or the cost of production of the goods subject to statutorily permitted adjustments. 19 U.S.C. § 1677b(a)(1)(B)(i)-(ii), (a)(4). The export price, or "EP," is the price at which the subject merchandise is sold by the producer or exporter to an unaffiliated purchaser in the U.S. or for exportation to the U.S. 19 U.S.C. § 1677a(a). However, if the foreign producer or exporter is affiliated with the importer of the subject merchandise, then a constructed export price, or "CEP," may be used. § 1677a(b). The CEP is the price, as adjusted pursuant to section 1677a, at which the subject merchandise is sold in the U.S. to a buyer unaffiliated with the producer or exporter. § 1677a(b). The weighted-average dumping margin expresses the DM as a percentage, and is determined by dividing the aggregate DMs of a specific exporter or producer by the aggregate EPs or CEPs of that same exporter or producer. 19 U.S.C. § 1677(35)(B).

[3] Zeroing is a practice whereby Commerce gives the sales margins of merchandise sold at or above fair value prices an assumed value of zero. *See Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1345-46 (Fed. Cir. 2005). With zeroing, Commerce uses only the sales margins of merchandise sold at less than fair value prices to calculate the final weighted-average dumping margin. *See id.*

Communities, *United States – Laws, Regulations and Methodology for Calculating Dumping Margins (Zeroing)*, at 4-5, WT/DS294/1 (June 19, 2003). On October 31, 2005, a WTO Panel found Commerce's use of zeroing in investigations involving comparisons of weighted-average normal values to weighted-average U.S. prices to be inconsistent with U.S. obligations under the WTO Antidumping Agreement ("*AD Agreement*"). *See* Panel Report, *United States – Laws, Regulations and Methodology for Calculating Dumping Margins ("Zeroing")*, ¶¶ 8.2-8.4, WT/DS294/R (Oct. 31, 2005) ("*Panel Report*"). More specifically, the WTO Panel found that zeroing violates the *AD Agreement* as such and as applied in the specific investigations at issue.[4] *Id*. The Appellate Body upheld the WTO Panel's determination on appeal and went further, stating that Commerce's use of zeroing in certain administrative reviews was also inconsistent with the *AD Agreement*. *See* Appellate Body Report, *United States – Laws, Regulations and Methodology for Calculating Dumping Margins ("Zeroing")*, ¶¶ 132-35, 263(a)(i), WT/DS294/AB/R (Apr. 18, 2006).

In response to the *Panel Report*, Commerce announced that it would no longer give negative value dumping margins an assumed value of zero in antidumping investigations

---

[4] A law, regulation, or measure of a WTO Member that violates a WTO agreement "as such" means that the "Member's conduct – not only in a particular instance that has occurred, but in future situations as well – will necessarily be inconsistent with that Member's WTO obligations." Appellate Body Report, *United States – Sunset Reviews of Anti-Dumping Measures on Oil Country Tubular Goods from Argentina*, ¶ 172, WT/DS268/AB/R (Nov. 29, 2004). In contrast, a law, regulation or measure that violates a WTO agreement "as applied" means that the WTO Member's "application of a general rule to a specific set of facts" is inconsistent with that Member's WTO obligations. *Id*. at ¶ 6 n.22.

involving comparisons of "average-to-average" prices.[5] *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation; Final Modification*, 71 Fed. Reg. 77,722, 77,722 (Dep't Commerce Dec. 27, 2006) ("*Section 123 Determination*"). Throughout its pronouncement, Commerce explicitly stated that the central purpose of the *Section 123 Determination* was to conform the agency's practices with the international trade obligations of the United States, as they are outlined in the *Panel Report*. *See id*. at 77,722. Commerce explained that the department's new policy would apply in (1) the recalculation of the dumping margins in the "specific antidumping investigations challenged by the [European Communities] in [the *Panel Report*]" and (2) all then current and future investigations involving comparisons of average-to-average prices. *Id*. at 77,725. Notably, the *Section 123 Determination* did not embrace all of the findings of the WTO Appellate Body, stating instead that the change in policy applied only to investigations where Commerce uses average-to-average comparisons and did not extend to any other kind of investigation or administrative review. *Id*. at 77,724.

Commerce subsequently applied its policy change to the particular investigations that were at issue in the *Panel Report*. *Implementation of the Findings of the WTO Panel in US –*

---

[5] In Sections 123 and 129 of the URAA, Congress established two procedures by which an adverse decision from the WTO Dispute Settlement Panel or Appellate Body may be implemented into domestic law. A Section 123 determination amends, rescinds, or modifies an agency regulation or practice that is found to be inconsistent with any of the Uruguay Round Agreements. 19 U.S.C. § 3533(g)(1). A Section 129 determination amends, rescinds, or modifies the application of an agency regulation or practice in a specific antidumping, countervailing duty, or safeguards proceeding that is found to be inconsistent with U.S. obligations under the WTO *AD Agreement*, the Agreement on Subsidies and Countervailing Measures, or the Safeguards Agreement. 19 U.S.C. § 3538(a)(1), (b)(2).

*Zeroing (EC): Notice of Determinations Under Section 129 of the Uruguay Round Agreements Act and Revocations and Partial Revocations of Certain Antidumping Duty Orders*, 72 Fed. Reg. 25,261, 25,262 (Dep't Commerce May 4, 2007) ("*Section 129 Determination*").  In applying the *Section 123 Determination*, Commerce recalculated the weighted-average dumping margin for the subject merchandise without the use of zeroing, finding that it decreased from 2.50% to zero. *Id*. at 25,262-263.  The agency noted that it would revoke the antidumping order on stainless steel bar from Italy, effective for entries of the subject merchandise made on or after April 23, 2007.  *Id*. at 25,263.  During this proceeding, Plaintiffs argued that Commerce should not impose antidumping duties on unliquidated entries of the subject merchandise, irrespective of the date that the goods entered the United States.  *See Issues and Decision Memorandum for the Final Results of the Section 129 Determinations*, A-122-838, A-421-807, A-427-820, A-428-830, A-475-829, A-412-822, A-401-806, A-469-807, A-475-820, A-423-808, A-475-824, A-475-818 (Apr. 9, 2007), Def. Br. App. B at 15 ("*Section 129 Determination Issues and Decision Memorandum*").  However, Defendant rejected that notion, stating that "these [S]ection 129 proceedings will not apply to entries made before [April 23,2007]." *Id*. at 17.  Importantly, while Plaintiffs commented on Commerce's preliminary determination in the Section 129 proceeding, they did not challenge the final results contained in the *Section 129 Determination*.

On April 2, 2007, Plaintiffs filed a request with Commerce to review the antidumping duty order for entries of the subject merchandise made during the period of review, the time frame corresponding to the sixth administrative review of the antidumping duty order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 72 Fed. Reg. 20,986,

20,986 (Dep't Commerce Apr. 27, 2007). However, Plaintiffs withdrew that request on June 25, 2007. *Stainless Steel Bar from Italy: Notice of Rescission of Antidumping Duty Administrative Review*, 72 Fed. Reg. 45,223, 45,223 (Dep't Commerce Aug. 13, 2007). Commerce ultimately rescinded the sixth administrative review, noting that it would instruct Customs to assess antidumping duties on all entries of the subject merchandise "at rates equal to the cash deposit of estimated antidumping duties required at the time of entry . . . ." *Id*. Accordingly, Customs liquidated Plaintiffs' entries of the subject merchandise at the cash deposit rate, as instructed.[6]

On March 19, 2008, Plaintiffs filed sixteen protests challenging Custom's liquidation of entries they made during the period of review. *See* Def. Br. App. A. Plaintiffs argued that Customs lacked the authority to assess antidumping duties on the subject merchandise because, at the time of liquidation, there was no valid antidumping duty order in place. Customs denied eight of the original sixteen protests between May and October 2008, explaining that a challenge to the calculation of antidumping duties was not a protestable decision and that the agency had correctly liquidated those entries pursuant to Commerce's instructions. *Id.*

## II. Standard of Review

When deciding a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim for which relief may be granted, the Court assumes that all undisputed facts alleged in the complaint are true and it must draw all reasonable inferences in the plaintiff's

---

[6] *See* Def. Br. App. A (containing Protest Nos. 1704-08-100050, 0901-08-100100, 1601-08-100175, 5301-08-100199, 2704-08-101095, 4601-08-100679, 4601-08-100658, 1401-08-100127).

favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

A fundamental question in any action before the Court is whether subject matter jurisdiction exists over the claims presented. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction involves the Court's power to hear a case and declare the law, and when it ceases to exist, "the [C]ourt must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The party invoking the Court's jurisdiction bears the burden of establishing it. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

Finally, assuming that all of the factual allegations are true, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged," thereby raising the plaintiff's right to relief above the speculative level. *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Though detailed factual allegations are not required, the plaintiff's complaint must contain more than labels and conclusions or a formulaic recitation of the elements of a cause of action to provide the defendant with fair notice of its claims and survive a motion to dismiss for failure to state a claim upon which relief may be granted. *See id*. at 1949; *Twombly*, 550 U.S. at 555.

### III.  Discussion

### A.  Subject Matter Jurisdiction

Defendant argues that the court lacks subject matter jurisdiction over Plaintiffs' claims under both § 1581(a) and § 1581(i).  Defendant notes that it was Commerce, and not Customs, who conducted the Section 129 proceeding, calculated the weighted-average dumping margin, and revoked the antidumping duty order for particular entries.  Accordingly, Defendant claims that Customs's role in liquidating Plaintiffs' entries was merely ministerial in nature, and that those acts do not constitute a protestable decision under § 1514.  Def. Br. 7-9.  Defendant also argues that § 1581(i) is not a proper basis for the court to establish jurisdiction over Plaintiffs' claim against Commerce because § 1581(c) would have provided Plaintiffs with an adequate remedy had the Plaintiffs (1) challenged Commerce's *Section 129 Determination* or (2) maintained the sixth administrative review and challenged the final results thereof.  Def. Br. 9-12.

In contrast, Plaintiffs aver that Customs's act of liquidating and assessing antidumping duties on its entries of the subject merchandise made during the period of review, despite the revocation of the antidumping duty order on those goods, is a protestable action that is reviewable under § 1581(a). Pl. Br. 7-10.  Specifically, Plaintiffs claim that they are challenging Customs's assessment of antidumping duties on the subject merchandise because Commerce determined that no dumping occurred and, thus, there was no valid antidumping order in place at the time of liquidation.  Pl. Br. 8.  Plaintiffs also argue that the court may review Commerce's application of "an invalid dumping order" to entries of the subject merchandise made during the

period of review under § 1581(i).  Pl. Br. 10.  Plaintiffs allege that Commerce's application of antidumping duties to those entries "exceeded the scope of [the agency's] authority and contravened 19 U.S.C. § 1673."  Pl. Br. 11.  Finally, Plaintiffs note that § 1581(c) did not provide them with an adequate remedy because they had "no reason" to either challenge the *Section 129 Determination* or complete the sixth administrative review given that the *Section 129 Determination* allegedly invalidated the antidumping duty order for all unliquidated entries of the subject merchandise, irrespective of the date of entry.  Pl. Br. 12-14.

Chapter 95 of Title 28 of the United States Code contains Congress's jurisdictional grant to the Court.  The first section of Chapter 95, § 1581, is titled "Civil actions against the United States and agencies and officers thereof," and consists of subsections (a) through (j).  Each subsection of § 1581 "delineates particular laws over which the Court . . . may assert jurisdiction."  *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988).

### 1. Plaintiffs' Claim Against Customs & 28 U.S.C. § 1581(a)

Section 1581(a) provides the Court with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part," arising under 19 U.S.C. § 1515.  § 1581(a).  Congress outlines the rules for Customs's review of a protest in § 1515, with the filing of a protest by an aggrieved party under 19 U.S.C. § 1514 being a condition precedent for Customs to exercise that authority.  § 1515(a).  Customs must either grant or deny the protest before a party may sue under § 1581(a).  *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994).

Section 1514(a) sets forth the categories of Customs decisions that an aggrieved party may protest. § 1514(a). Specifically, Customs may review protests challenging

> (1) the appraised value of merchandise;
> (2) the classification and rate and amount of duties chargeable;
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under [19 U.S.C. § 1337];
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either [19 U.S.C. § 1500] or [§ 1504];
> (6) the refusal to pay a claim for drawback; or
> (7) the refusal to reliquidate an entry under [19 U.S.C. § 1520(d)];

§ 1514(a). Importantly, these categories are exclusive, "and if Customs' underlying decision does not relate to any of these seven categories, [then] the court may not exercise § 1581(a) jurisdiction over an action contesting Customs' denial of a protest filed against that decision." *Am. Nat'l Fire Ins. Co. v. United States*, 30 CIT 931, 939-40, 441 F. Supp. 2d 1275, 1285 (2006) (citing *Playhouse Imp. & Exp., Inc. v. United States*, 18 CIT 41, 44, 843 F. Supp. 716, 719 (1994)); *see also Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 976.

Although Plaintiffs construct their claim against Customs as one that falls within the purview of § 1581(a), it is in essence tantamount to a challenge to an antidumping decision. Plaintiffs describe the central focus of their claim against Customs as a challenge to the agency's "assessment upon liquidation of antidumping duties at *any* rate in a case in which Commerce has determined [that] no dumping occurred." Pl. Br. 8. Plaintiffs note that their claim against Customs definitively centers on the agency's "authority to take steps to enforce an antidumping order [that was subsequently ] determined [to be] invalid within the meaning of 19 U.S.C.

§ 1673." Pl. Br. 11. According to Plaintiffs, § 1514(a)(5) therefore provides the court with jurisdiction over their claim.[7] Pl. Br. 8.

However, it is well settled that Commerce, and not Customs, conducts antidumping proceedings to (1) calculate and determine antidumping rates and (2) issue antidumping orders, where appropriate. *See Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 976. "Customs cannot 'modify . . . Commerce's [antidumping] determinations, their underlying facts, or their enforcement.'" *Id*. at 977 (brackets & citation omitted). Indeed, Customs has no discretion in the matter, and merely liquidates entries of the subject merchandise according to Commerce's instructions. *See id*. Customs' role in the liquidation of subject merchandise is ministerial in nature, "and those actions do not amount to antidumping 'decisions' under 19 U.S.C. § 1514." *Am. Nat'l Fire Ins. Co.*, 30 CIT at 940, 441 F. Supp. 2d at 1285-86. Thus, because Customs does not make an antidumping decision under § 1514(a), the court may not hear Plaintiffs' claim here under § 1581(a). *See Mitsubishi Elecs. Am., Inc.*, 44 F.3d at 977.

**2. Plaintiffs' Claim Against Commerce & 28 U.S.C. § 1581(i)**

Section 1581(i) provides the Court with broad residual jurisdiction over civil actions that arise out of import transactions. *See Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994). However, Congress's grant is subject to an important caveat, namely that the Court may not exercise jurisdiction pursuant to § 1581(i) where jurisdiction "is or could have been available" under another subsection of § 1581. *Consol. Bearings Co. v.*

---

[7] Customs may review a protest challenging "the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either [19 U.S.C. § 1500] or [§ 1504]." § 1514(a)(5).

*United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003) (quotations & citation omitted). This principle holds true for an antidumping proceeding that is otherwise reviewable under 19 U.S.C. § 1516a(a).[8] § 1581(i). In other words, the subsections of § 1581 must be read in concert and a litigant may invoke the Court's jurisdiction under § 1581(i) only if (1) jurisdiction is unavailable under all other subsections of § 1581, or (2) jurisdiction is available under another subsection of § 1581, but the relief provided by that subsection is manifestly inadequate. § 1581(i); *Consol. Bearings Co.*, 348 F.3d at 1002.

Plaintiffs argue that Commerce exceeded its authority when it issued liquidation instructions to Customs to assess antidumping duties on entries of the subject merchandise made during the period of review, a claim that the court may hear under both § 1581(i)(2) and (i)(4).[9] Pl. Br. 10-14. More specifically, Plaintiffs note that they do not challenge Commerce's liquidation instructions to Customs,[10] but instead contest Commerce's authority to enforce the antidumping duty order on entries made during the period of review in light of the order's

---

[8] Section 1516a provides for the judicial review of, among other determinations, the final results of an administrative review and of a Section 129 proceeding. § 1516a(a)(2)(B)(iii), (vii).

[9] Under those provisions, the Court has exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for," among other measures, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" or the administration and enforcement of matters referred to in § 1581(a)-(h) and § 1581(i)(1)-(3). § 1581(i)(2), (4).

[10] The Court has subject matter jurisdiction over a challenge to Commerce's liquidation instructions pursuant to the "administration and enforcement" language of § 1581(i)(4) as that subsection relates to § 1581(i)(2). *Consol. Bearings Co.*, 348 F.3d at 1002. That kind of claim "essentially contends that the instructions do not accurately (*i.e.*, lawfully) reflect the results of the underlying administrative proceeding." *DentalEZ, Inc. v. United States*, Slip Op. 07-98, 2007 WL 1847615, at *2 (June 28, 2007) (citation omitted).

Court. No. 08-00381                                                                                            Page 14

subsequent revocation in the *Section 129 Determination*. Pl. Br. 11. Plaintiffs also aver that they had "no reason" to either appeal the *Section 129 Determination* or complete the sixth administrative review because they instead took issue with Commere's "enforcement of the order" that was revoked by the *Section 129 Determination*. Pl. Br. 13. Citing § 1581(i), Plaintiffs therefore ask the court to find jurisdiction over their claim here because the antidumping duties assessed on the subject merchandise not only provided for duties on the importation of merchandise for reasons other than the raising of revenue, but also concerned the administration and enforcement of a matter referred to in § 1581(c). Pl. Br. 10.

     Despite Plaintiffs' quixotic assertions to the contrary, § 1581(c) could have provided them with the ability to seek adequate relief, and their failure to choose a remedy thereunder does not permit the court to find jurisdiction here under § 1581(i). The core of Plaintiffs' claim against Commerce takes issue with the scope of the *Section 129 Determination*, namely Commerce's decision not to make the revocation of the antidumping duty order apply retroactively to all then unliquidated entries of stainless steel bar from Italy. However, Plaintiffs had a meaningful opportunity to challenge that decision by making a case against the final results of two proceedings that are judicially reviewable under § 1581(c). In particular, Plaintiffs could have contested the scope of the *Section 129 Determination* under § 1516a(a)(2)(B)(vii). Alternatively, Plaintiffs could have waited for Commerce to complete the sixth administrative review, and dispute the final results of that proceeding under § 1516a(a)(2)(B)(iii). However, Plaintiffs declined to avail themselves of either option, and Commerce rightly instructed Customs to assess antidumping duties at "rates equal to the cash deposit of, or bond for,

estimated antidumping duties . . . required on that merchandise at the time of entry" after Plaintiffs withdrew their request for the sixth administrative review. 19 C.F.R. § 351.212(c)(1)(i). Moreover, that Plaintiffs participated in both administrative proceedings, but had "no reason" to challenge the final results of the *Section 129 Determination,* or to complete the sixth administrative review, does not satisfactorily demonstrate to the court that the remedy provided by § 1581(c) is manifestly inadequate. *See Am. Air Parcel Forwarding Co., Ltd. v. United States*, 718 F.2d 1546, 1550-51 (Fed. Cir. 1983). Thus, jurisdiction is unavailable here under § 1581(i) precisely because Plaintiffs could have sought relief under § 1581(c) and because Congress did not intend for subsection (i) – and in particular paragraph (4) – "to circumvent the exclusive method of judicial review of those antidumping . . . determinations listed in [19 U.S.C. § 1516a] . . . ." H.R. Rep. No. 96-1235, at 48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3759.

Plaintiffs also contend that changed circumstances – *i.e.*, (1) a recent clarification by the WTO Dispute Settlement Body and (2) the inconsistent positions held by the United States at that forum – warrant reconsideration of the Court's interpretation of the prospective effect of a Section 129 proceeding in § 3538(c). Pl. Br. 17-22. It is well known that decisions from the WTO are "not binding on the United States, much less this court." *Timken Co. v. United States*, 354 F.3d 1334, 1344 (Fed. Cir. 2004). That the United States interprets a domestic statute differently in separate cases at the WTO, with each action concerning distinct facts and unique legal issues, is more indicative of the Government's astute lawyering than suggesting to the court

Court. No. 08-00381 Page 16

that the text of § 3538(c) is ambiguous. Therefore, Defendant's advocacy at the WTO does not convince the court that it should reconsider the plain meaning of the text of § 3538(c).

Finally, because the court finds that it does not have jurisdiction over the claims presented, it need not decide whether Plaintiffs have stated a claim upon which relief may be granted. *See Arbaugh*, 546 U.S. at 514.

## IV. Conclusion

For the reasons discussed herein, Defendant's Motion to Dismiss is granted. Section 1581(a) does not provide the court with jurisdiction here because Plaintiffs' claims do not fit within one of the seven specifically enumerated categories of protestable decisions in § 1514(a). Moreover, because § 1581(c) could have provided Plaintiffs with adequate relief, § 1581(i) is not the proper basis for the court to exercise its jurisdiction.

Date:  July 23, 2009  /s/ Judith M. Barzilay  
       New York, New York        Judith M. Barzilay, Judge

Slip Op. 09-77

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ACCIAIERIE VALBRUNA S.p.A and VALBRUNA STAINLESS, INC., | : : : : | |
| Plaintiffs, | : : | **Before: Judith M. Barzilay, Judge** |
| v. | : : | **Court No. 08-00381** |
| UNITED STATES, | : : | |
| Defendant. | : : | |

## **JUDGMENT**

Upon consideration of the Motion to Dismiss and accompanying brief submitted by Defendant United States, as well as all briefs filed in response to that Motion by Plaintiffs Acciaierie Valbruna S.p.A. and Valbruna Stainless, Inc., the court's opinion in this action on July 23, 2009, and all other papers filed in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that this case, Court No. 08-00381, is **DISMISSED**.


Date:   July 23, 2009                                                    /s/ Judith M. Barzilay
         New York, New York                                           Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____   By: _____
                                                                            Deputy Clerk